NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 221028-U

NO. 4-22-1028

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 19, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* I.G., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois), | ) | Knox County |
|     Petitioner-Appellee, | ) | No. 18JA26 |
|     v. | ) | |
| Ira G., | ) | Honorable |
|     Respondent-Appellant. | ) | Curtis S. Lane, |
| | ) | Judge Presiding. |

---

JUSTICE ZENOFF delivered the judgment of the court.
Justices Harris and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment terminating respondent's parental rights, concluding no meritorious issues could be raised on appeal.

¶ 2    On November 1, 2022, the trial court entered an order terminating the parental rights of respondent, Ira G., to his minor child, I.G. Respondent appealed, and counsel was appointed to represent him. Appellate counsel now moves to withdraw, citing *Anders v. California*, 386 U.S. 738 (1967), on the basis that she cannot raise any potentially meritorious argument on appeal. The record indicates counsel sent a copy of her motion and accompanying memorandum of law to respondent by mail. Respondent has not filed a response. After reviewing the record and counsel's memorandum, we grant the motion to withdraw and affirm the court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. Case Opening

¶ 5          On May 18, 2018, the State filed a petition for adjudication of wardship and a

motion to have I.G. placed in temporary custody. The petition alleged I.G.'s environment was

injurious to his welfare in that I.G. was born with cocaine in his system. Despite having notice,

neither respondent nor I.G.'s mother, Amber W., appeared at the shelter care hearing. Following

that hearing, the trial court found that there was probable cause to believe that I.G. was

neglected, and it ordered temporary guardianship and custody of the minor to be placed with the

Illinois Department of Children and Family Services (DCFS).

¶ 6          On July 10, 2018, the trial court adjudicated I.G. neglected pursuant to

respondent's stipulation and section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court

Act) (705 ILCS 405/2-3(1)(b) (West 2018)).

¶ 7          Following a September 11, 2018, dispositional hearing, the trial court made I.G. a

ward of the court and granted continued guardianship and custody with DCFS.

¶ 8          On February 9, 2021, the trial court changed the permanency goal to substitute

care pending termination of respondent's parental rights.

¶ 9          On February 28, 2022, the State filed a petition to terminate respondent's parental

rights. The petition alleged that respondent was an unfit parent in that he failed to (1) make

reasonable efforts to correct the conditions that caused I.G. to be removed during a nine-month

period after I.G. was adjudicated neglected, namely, the period of April 25, 2021, to January 25,

2022 (the relevant nine-month period) (750 ILCS 50/1(D)(m)(i) (West 2020)); (2) make

reasonable progress toward the return of I.G. to his care during a nine-month period after I.G.

was adjudicated neglected, *i.e.*, the relevant nine-month period (750 ILCS 50/1(D)(m)(ii) (West

2020)); (3) protect I.G. from conditions within the environment injurious to his welfare (750

ILCS 50/1(D)(g) (West 2020)); and (4) maintain a reasonable degree of interest, concern, or responsibility as to I.G.'s welfare (750 ILCS 50/1(D)(b) (West 2020)). The State also included Amber W. in the petition to terminate parental rights; however, Amber W. surrendered her parental rights on May 24, 2022, and is not a party to this appeal.

¶ 10                                    B. Fitness Hearing

¶ 11            The trial court commenced the fitness hearing on October 4, 2022. Respondent failed to appear. At the hearing, the State first presented the testimony of Diana Bledsoe, I.G.'s caseworker since May 2021. According to Bledsoe, I.G. had been in care since 2018. Bledsoe testified respondent's service plan required that he obtain substance abuse, mental health, and domestic violence assessments and follow recommendations and complete weekly drug screens. Respondent was further required to maintain appropriate housing and legal employment and participate in parenting classes. According to Bledsoe, between April 25, 2021, and January 25, 2022, respondent failed to: complete a substance abuse assessment; participate in drug drops, parenting education and domestic violence classes, and individual counseling; maintain legal employment; and complete a mental health assessment. Regarding the requirement that respondent obtain safe and stable housing, Bledsoe stated, "To my knowledge, [respondent] has a house but nobody's been able to get in the house to see if it's safe or not." Bledsoe indicated she called respondent and sent multiple letters in an attempt to inspect the house, however, Bledsoe "had no communication [with respondent] during that time frame." According to Bledsoe, respondent's last visit with I.G. was in "February or March of 2020."

¶ 12            On cross-examination, Bledsoe agreed respondent lived at the same residence throughout the course of the proceedings. Additionally, Bledsoe agreed that, prior to the relevant nine-month period, respondent had started some of the recommended services. However,

Bledsoe clarified, "I think he started some parenting. He'd done some substance abuse treatment, but then he tested positive so he was supposed to go back and do it again." When asked about her inability to inspect respondent's house, Bledsoe indicated she was unable to make contact with respondent until "April of last year when he came to court." Bledsoe testified she made three appointments with respondent "in court," but when she arrived at his house to inspect it, respondent was "never there."

¶ 13     The trial court found the respondent unfit as to paragraphs 7(a), (b), and (d) of the State's petition to terminate parental rights. Specifically, the court noted that "maybe there was completion of a parenting education course *** if you incorporated it in your lifestyle, [the objective] of a parenting course is to have contact with your child, which [respondent] clearly has not for over two years." Further, the court found, "[n]othing has been completed, and even if it was, clearly [respondent] did not absorb it into his lifestyle."

¶ 14                    C. Best Interest Hearing

¶ 15     On November 1, 2022, the trial court conducted the best interest hearing, which respondent attended. The court-appointed special advocate's report and the best interest report filed October 26, 2022, were admitted without objection. The authors of the best interest report noted I.G. had been in the care of his maternal grandmother, Cindy R., "since he was two weeks old." I.G. did not "have any relationship with his parents." According to the report, respondent was not currently participating in any services. Bledsoe testified Cindy R. provided I.G. with emotional support, physical safety, clothing, food, and shelter, and all of his medical needs were met. Cindy R. was willing to provide permanence through adoption. On cross-examination, Bledsoe indicated I.G. had been in Cindy R.'s care for four years. Moreover, respondent's last

visit with I.G. occurred nearly two years ago on March 16, 2020, "which would be in excess of half of [I.G.'s] life."

¶ 16    Respondent testified when I.G. was born he quit "partying," participated in drug treatment, and had not used drugs since. Respondent stated when the COVID-19 pandemic started, Lutheran Social Services (LSS) told him to "quit coming out there." When LSS wanted him to "start coming back out there," respondent alleged LSS called Amber W.'s phone number, even though they had respondent's contact information. Respondent admitted he had 19 "dirty drops" because failing to attend a drug test was considered a positive result. Respondent testified he and I.G. were attached to one another, and initially, respondent "never missed a visit." However, when LSS reduced his visitation to one hour a month due to positive drug drops, respondent stopped attending because he "[did not] see the point." Respondent acknowledged Cindy R. was "taking good care of [I.G.] and I feel that he's safe and all that, but I just want him to know who I am and that I care about him."

¶ 17    Respondent's sister, Catherine G., testified on respondent's behalf. Catherine indicated, "This is the first time [respondent] has been sober *** for a long period of time." Catherine attributed respondent's sobriety to I.G.'s birth. According to Catherine, she observed a visit between respondent and I.G. during a Christmas gathering two years prior in which I.G. called respondent "dad," played with respondent, and "didn't ask much of anything from anybody but [respondent]."

¶ 18    Following arguments, the trial court found termination of respondent's parental rights was in I.G.'s best interest. Specifically, the court emphasized, "Nothing has been done due to the lack of contact by [respondent]" for two years. Noting respondent's lack of involvement in the case, the court stated, "[I]t got to the point where [respondent's counsel] was allowed to

withdraw because [respondent], did not appear at the hearings." The court concluded it was "[o]verwhelmingly" in I.G.'s best interest that respondent's parental rights be terminated.

¶ 19          This appeal followed.

¶ 20                            II. ANALYSIS

¶ 21          On appeal, appellate counsel seeks to withdraw on the basis that she cannot raise any arguments of potential merit.

¶ 22          The procedure for appellate counsel to withdraw set forth in *Anders* applies to findings of parental unfitness and termination of parental rights. *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000). According to this procedure, counsel's request to withdraw must "be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Anders*, 386 U.S. at 744. Counsel must "(a) sketch the argument in support of the issues that could conceivably be raised on appeal, and then (b) explain why he believes the arguments are frivolous." *S.M.*, 314 Ill. App. 3d at 685. Counsel must then conclude the case presents no viable grounds for appeal. *S.M.*, 314 Ill. App. 3d at 685. In doing so, counsel should review both the unfitness finding and the best interest determination and indicate in the brief that she has done so. *S.M.*, 314 Ill. App. 3d at 685-86.

¶ 23          In the instant case, counsel asserts she has reviewed the record on appeal, including the report of proceedings of the termination hearing, and has concluded there are no appealable issues of merit. Counsel states she has considered raising the argument that the trial court erred in finding respondent failed to make reasonable efforts during the relevant nine-month period. She also indicates she has considered raising the argument that the trial court erred in finding respondent failed to make reasonable progress during the relevant nine-month period. Counsel further states she has considered raising the argument the court erred in finding

respondent failed to maintain a reasonable degree of interest, concern, or responsibility as to I.G.'s welfare. Moreover, counsel considered raising an argument challenging the court's best interest finding. We address each argument in turn and ultimately agree with counsel's conclusion there are no issues of arguable merit to be raised on review.

¶ 24                                    A. Unfitness Findings

¶ 25        We first address appellate counsel's assertion no meritorious argument can be made the trial court erred in finding that respondent failed to make reasonable progress during the relevant nine-month period.

¶ 26        Termination of parental rights under the Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2020)) is a two-step process. *In re Julian K.*, 2012 IL App (1st) 112841, ¶ 1. Parental rights may not be terminated without the parent's consent unless the trial court first determines, by clear and convincing evidence, the parent is unfit as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). Pursuant to section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2020)), a parent may be found unfit if he fails to "make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected *** minor." A "parent's failure to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care during any 9-month period following the adjudication" constitutes a failure to make reasonable progress for purposes of section 1(D)(m)(ii). 750 ILCS 50/1(D)(m)(ii) (West 2020). "As the grounds for unfitness are independent, the trial court's judgment may be affirmed if the evidence supports the finding of unfitness on any one of the alleged statutory grounds." *In re H.D.*, 343 Ill. App. 3d 483, 493 (2003).

¶ 27　　　　We will not disturb a finding of unfitness unless it is against the manifest weight of the evidence. *In re J.H.*, 2020 IL App (4th) 200150, ¶ 68. "A finding is against the manifest weight of the evidence only if the evidence clearly calls for the opposite finding [citation], such that no reasonable person could arrive at the circuit court's finding on the basis of the evidence in the record [citation]." (Internal quotation marks omitted.) *J.H.*, 2020 IL App (4th) 200150, ¶ 68. "This court pays great deference to a trial court's fitness finding because of [that court's] superior opportunity to observe the witnesses and evaluate their credibility." (Internal quotation marks omitted.) *In re O.B.*, 2022 IL App (4th) 220419, ¶ 29.

¶ 28　　　　Here, the State proved by clear and convincing evidence that respondent failed to make reasonable progress toward the return of I.G. during the nine-month period of April 25, 2021, to January 25, 2022, as alleged in paragraph 7(b) of the State's petition to terminate. Pursuant to respondent's integrated assessment, he was to engage in substance abuse services, complete parenting classes, secure steady employment, and attend visits with I.G. According to the service plan dated April 27, 2021, respondent failed to appear for any of his drug drops since May 2020 and was not participating in any of the recommended services. At the October 2021 fitness hearing, Bledsoe testified she "had no communication" with respondent during the relevant nine-month period. Additionally, Bledsoe indicated respondent's last visit with I.G. was "February or March of 2020." Although respondent did initially complete substance abuse treatment in March 2019, he tested positive for cocaine on August 5, 2019, and September 6, 2019. As a result, respondent was recommended for additional substance abuse services, which he failed to complete.

¶ 29  Based on this evidence, respondent did not "substantially fulfill his ***" obligations under the service plan" and therefore did not make reasonable progress toward the return of I.G. to his care. 750 ILCS 50/1(D)(m)(ii) (West 2020).

¶ 30  Because the State proved one ground of unfitness by clear and convincing evidence, we agree with appellate counsel no meritorious argument can be made that the trial court's finding of unfitness was against the manifest weight of the evidence. See *H.D.*, 343 Ill. App. 3d at 493.

¶ 31                          B. Best Interest Findings

¶ 32  Appellate counsel next asserts she can make no meritorious argument that the trial court's best interest finding was against the manifest weight of the evidence.

¶ 33  When a trial court finds a parent to be unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347, 352 (2004). "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. The State must prove by a preponderance of the evidence that termination of parental rights is in the minor's best interest. *D.T.*, 212 Ill. 2d at 366. In making the best interest determination, the court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2020). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the
> child's identity; (3) the child's background and ties, including familial,
> cultural, and religious; (4) the child's sense of attachments, including love,
> security, familiarity, and continuity of affection, and the least-disruptive
> placement alternative; (5) the child's wishes; (6) the child's community

ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

"The court's best interest determination need not contain an explicit reference to each of these factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. On review, "[w]e will not disturb a court's finding that termination is in the child[ ]'s best interest unless it was against the manifest weight of the evidence." *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005).

¶ 34        Here, the trial court's best interest finding was not against the manifest weight of the evidence. The best interest report showed I.G. was thriving in his relative foster placement. I.G. was bonded with Cindy R. and referred to her as "mom." The report indicated I.G.'s physical and emotional needs were being met by Cindy R. and that "this is the only home that [I.G.] has ever known." Cindy R. agreed to provide permanency for I.G. through adoption. According to the authors of the best interest report, I.G. did not "have any relationship with his parents" and lived with Cindy R. "since he was two weeks old." Respondent failed to complete mental health treatment or domestic violence classes; additionally, respondent failed to complete drug drops since May 2020. Respondent cut off contact with LSS and failed to exercise visitation with I.G. since March 16, 2020. The court noted it did not believe respondent was "objecting to the termination," referencing respondent's testimony that "[respondent] stated he wanted to let the child know that he cared for him, that he loved him but he acknowledged that the

grandmother was taking good care of the child." The court found that it was "[o]verwhelmingly" in I.G.'s best interest that respondent's parental rights be terminated.

¶ 35 Based on our review of the record on appeal, we agree with appellate counsel no meritorious argument can be made that the trial court's best interest determination was against the manifest weight of the evidence. Accordingly, we grant counsel's motion to withdraw and affirm the court's judgment.

¶ 36                                III. CONCLUSION

¶ 37 For the reasons stated, consistent with Illinois Supreme Court Rule 23(b) (eff. Feb. 1, 2023), we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 38 Affirmed.